EVARISTO ACEVEDO DÍAZ y CARMEN ACEVEDO LÓPEZ, por sí y ambos en representación de todos los igualmente situados, demandantes y recurrentes, *v.* GENARO COLLAZO, SECRETARIO DEL DEPARTAMENTO DE SERVICIOS SOCIALES, ET AL., demandados y recurridos.

*Número:* R-81-10 *Resuelto:* 10 de marzo de 1982

*Manuel J. Vera Vera,* de Servicios Legales de Puerto Rico, Inc., abogado de los recurrentes; *Héctor A. Colón Cruz, Procurador General,* y *Marta Quiñones, Procuradora General Auxiliar,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Este pleito plantea las interrogantes siguientes: ¿Tiene jurisdicción el Tribunal General de Justicia de Puerto Rico para ventilar litigios fundados exclusivamente en la Ley

Federal de Derechos Civiles, 42 U.S.C. sec. 1983? De tenerse, ¿justifican los hechos de este caso la invocación de esa ley? De poder invocarse, ¿qué normas de inmunidad aplican, las federales o las sentadas por el Estado Libre Asociado de Puerto Rico? Las reglas de inmunidad aplicables, ¿son en esta acción de orden absoluto o condicionado? Cuando se reclama inmunidad condicionada, ¿a quién le corresponde alegarla? ¿En quién recae la carga de la prueba? Examinemos los hechos que dan margen a estas preguntas.

Los demandantes recurrentes son beneficiarios del Programa de Asistencia Económica del Departamento de Servicios Sociales de Puerto Rico. Se les suspendió la asistencia que recibían. Instaron la correspondiente apelación administrativa.

El Programa de Asistencia Económica de Puerto Rico opera con fondos provistos bajo la Ley de Seguro Social de Estados Unidos, 42 U.S.C. sec. 301 *et seq.*, y otra legislación federal. El Secretario de Salud y Bienestar de Estados Unidos reglamenta el uso de estos fondos, 45 CFR sec. 205 *et. seq.* El reglamento federal, 45 CFR 205.10(a) (16), requiere que las apelaciones administrativas se resuelvan dentro de noventa días de su presentación. El reglamento local alude solamente a un "plazo razonable".

Al expirar por mucho el término de noventa días, los recurrentes demandaron en su carácter personal al Secretario de Servicios Sociales, al Presidente de la Junta de Apelaciones de Servicios Sociales y a otros. Alegaron que los demandados, so color de autoridad estatal, les están privando de derechos constitucionales y estatutarios federales. Entre otros remedios solicitaron el pago de daños por los demandados. El Tribunal Superior desestimó la demanda contra los funcionarios mencionados en su carácter personal. Acordamos revisar.

1. *El sistema judicial del Estado Libre Asociado posee jurisdicción concurrente para ventilar pleitos bajo la Ley de Derechos Civiles de Estados Unidos.*

 Las cortes estatales pueden ejercer jurisdicción concurrente sobre litigios basados en la Constitución, las leyes y los tratados de Estados Unidos, excepto cuando tal jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales. *Claflin* v. *Houseman, Assignee,* 93 U.S. 130, 136 (1876). El ejercicio de la jurisdicción concurrente por los tribunales estatales para proteger derechos de creación federal es un fenómeno común. La jurisdicción federal exclusiva representa la excepción y no la regla. *Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 507-508 (1962). Respecto a los criterios aplicables para resolver si se trata de una situación excepcional, véase: Redish y Muench, *Adjudication of Federal Causes of Action in State Court,* 75 Mich. L. Rev. 311 (1976). Normalmente se presume la jurisdicción concurrente en ausencia de expresión contraria por el Congreso o condición necesariamente implícita. Note, *State Enforcement of Federally Created Rights,* 73 Harv. L. Rev. 1551 (1960).

 En lo que toca a la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983,[1] no se desprende del texto o el historial legislativo del estatuto intención alguna del Congreso de conferirles a los tribunales federales jurisdicción exclusiva sobre este género de casos. El Tribunal Supremo de Estados Unidos ha resuelto específicamente

---

[1] La Sec. 1983 dispone:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

260

que los tribunales estatales pueden ejercer jurisdicción concurrente sobre pleitos fundados en la Sec. 1983. *Martínez* v. *California*, 444 U.S. 277, 283, n. 7 (1980); *Maine* v. *Thiboutot*, 448 U.S. 1, 3, n. 1 (1980). [2]

Antes de *Martínez* y *Thiboutot*, la abrumadora mayoría de los estados, con la excepción de Georgia y Tennessee, estaban ya ejerciendo jurisdicción concurrente sobre pleitos basados en la Sec. 1983. B. Neuborne, *Toward Procedural Parity in Constitutional Litigation*, 22 Wm. & Mary L. Rev. 725, 752, n. 114 (1981).

2. *La Sec. 1983 se extiende al género de violación estatutaria envuelto aquí.*

La Sec. 1983 ha sufrido un proceso de expansión a través de los años. En *Monroe* v. *Pape*, 365 U.S. 167 (1961), se extendió a actos inconstitucionales autorizados o no por los estados. En *Lynch* v. *Household Finance Corp.*, 405 U.S. 538 (1972), se resolvió que la Sec. 1983 cubre violaciones al derecho de propiedad y no solo a los derechos llamados personales. En *Maine* v. *Thiboutot*, supra, se decidió que el estatuto ampara tanto los derechos constitucionales como los estatutarios. La Sec. 1983 ampara hoy casi todos los derechos constitucionales federales, así como la mayoría de los derechos federales estatutarios. Neuborne, *op. cit.*, pág. 748.

■ En Estados Unidos, la tardanza administrativa en actuar con referencia a solicitudes de asistencia económica bajo las leyes federales constituye una violación de la Sec. 1983. *Like* v. *Carter*, 448 F.2d 798 (8th Cir. 1971), *cert.* denegado, 405 U.S. 1045 (1972); *Lynch* v. *Philbrook*, 550 F.2d 793 (2nd Cir. 1977). Resolvemos que se ha invocado adecuadamente en este caso la Sec. 1983.

---

[2] La cuestión de si las cortes estatales *pueden* ejercer jurisdicción concurrente sobre este género de asuntos federales es distinta al problema de si el Congreso puede *obligar* a los estados a ejercer tal potestad. Sobre las dificultades que entraña el asunto, véase: Redish y Muench, *op. cit.*, pág. 340 *et seq.* No nos expresamos aquí sobre la segunda cuestión, por no suscitarse en el caso.

3. *Las normas de inmunidad aplicables son las vigentes en la jurisdicción federal.*

█ Los estados carecen de facultad para inmunizar a funcionarios estatales o federales del impacto de la Sec. 1983. La cuestión ha sido definitivamente resuelta en *Martínez* v. *California,* supra, pág. 284; véase también: *Owen* v. *City of Independence,* 445 U.S. 622, 647, n. 30 (1980). El Tribunal Supremo de Estados Unidos examinó en *Martínez* un estatuto de California que le concedía inmunidad absoluta a los funcionarios a cargo de conceder o denegar la libertad bajo palabra. El Tribunal resolvió que el estatuto confería tan solo inmunidad contra acciones fundadas en el derecho estatal. En el caso de autos, la inmunidad de que puedan gozar los recurridos tiene que medirse por las normas federales. No existen circunstancias en la relación entre Estados Unidos y Puerto Rico que exijan en este caso la estructuración de normas especiales por inaplicabilidad a nuestras circunstancias de las reglas establecidas para los estados.

4. *Las reglas de inmunidad aplicables son de orden condicionado.*

Las normas tradicionales sobre inmunidad han estado sujetas en años recientes a procesos de erosión. *Hutchinson* v. *Proxmire,* 443 U.S. 111 (1979); *cf. United States* v. *Helstoski,* 442 U.S. 477 (1979); Blitz, *Erosion of Official Immunity of Personnel Supervisors in the Public Sector,* 8 Hastings Const. L.Q. 671 (1981). Aun así, hay ciertas categorías de funcionarios que gozan de inmunidad absoluta contra acciones fundadas en la Sec. 1983. Tal es el caso de los legisladores. *Tenney* v. *Brandhove,* 341 U.S. 367, 376 (1951); *Lake Country Estates* v. *Tahoe Planning Agcy.,* 440 U.S. 391 (1979); pero véase, *Hutchinson* v. *Proxmire,* supra. Tal es también el caso de los jueces, entre otros. *Pierson* v. *Ray,* 386 U.S. 547, 554–555 (1967); *Stump* v. *Sparkman,* 435 U.S. 349 (1978). *Cf. Feliciano Rosado* v. *Matos, Jr.,* 110 D.P.R. 550 (1981).

■ Los funcionarios y empleados de la Rama Ejecutiva, con excepciones que no vienen al caso, gozan tan solo de inmunidad condicionada. *Scheuer* v. *Rhodes*, 416 U.S. 232 (1974); *Butz* v. *Economou*, 438 U.S. 478 (1978). En *Scheuer* se afirmó:

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. Págs. 247–248.

Véanse: S. H. Nahmod, *Civil Rights and Civil Liberties Litigation*, Shepard's/McGraw-Hill, Colorado Springs, Colorado, 1979, capítulo 8, pág. 229 *et seq.;* W. R. Casto, *Innovations in the Defense of Official Inmunity under Section 1983*, 47 Tenn. L. Rev. 47, 85 *et seq.* (1979); Nota, *Civil Rights Suits Against State and Local Governmental Entities and Officials: Rights of Action, Immunities and Federalism*, 53 So. Cal. L. Rev. 945, 1048 *et seq.* (1980).

■ La defensa de inmunidad condicionada tiene dos aspectos. Un funcionario o empleado que no actúa de buena fe es responsable, pero aun cuando medie la buena fe responde si actuó irrazonablemente o si debió haber sabido que su conducta era ilegal. Por buena fe se entiende normalmente la ausencia de malicia. *Procunier* v. *Navarette*, 434 U.S. 555, 562, 565 (1978); *Wood* v. *Strickland*, 420 U.S. 308, 321–22 (1975). Como hemos dicho, sin embargo, la buena fe no basta. *Pierson* v. *Ray*, supra. No pueden violarse principios legales establecidos. *Wood* v. *Strickland*, supra. La razonabilidad de la actuación oficial constituye una cuestión de hecho a determinarse caso por caso.

Representa error la desestimación de la demanda contra los señores Collazo y González sin escuchar prueba sobre las dos cuestiones de hecho en que se funda su reclamo a la inmunidad, que puede ser tan solo de índole condicionada. *Imbler* v. *Pachtman*, 424 U.S. 409 (1976); *Williams* v. *Rhoden*, 629 F.2d 1099 (5th Cir. 1980).

5. *La carga de la prueba recae en los demandados.*

◼ La inmunidad condicionada constituye una defensa afirmativa. [*Rivera*] *Gómez* v. [*Calero*] *Toledo*, 446 U.S. 635, 639–640 (1980). Gran número de tribunales y comentaristas consideran que la carga de la prueba debe recaer sobre el funcionario demandado. *Gilker* v. *Baker*, 576 F.2d 245, 247 (9th Cir. 1978); *Dellums* v. *Powell*, 566 F.2d 167, 176 (D.C. Cir. 1977); *Foster* v. *Zeeko*, 540 F.2d 1310, 1313 (7th Cir. 1976); *McCray* v. *Burrell*, 516 F.2d 357, 370 (4th Cir. 1975); *Tritsis* v. *Backer*, 501 F.2d 1021, 1022–1023 (7th Cir. 1974); K. Sowle, *Qualified Immunity in Section 1983 cases: The Unresolved Issues of the Conditions for its Use and the Burden of Persuasion*, 55 Tulane L. Rev. 326, 398–416 (1981); L. E. Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations*, 69 Cal. L. Rev. 189, 223 (1981).

Por las razones expuestas *se revocará la sentencia parcial recurrida y se devolverá el caso a instancia para procedimientos compatibles con esta opinión.*

El Juez Asociado Señor Martín no intervino.