EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramonita Colón Rivera; María E. Crespo Virella, et al.<br><br>    Peticionarios<br><br>        v.<br><br>Hon. César Rey Hernández; en su capacidad personal y en su capacidad oficial como Secretario del Departamento de Educación de Puerto Rico, et al.<br><br>    Recurridos | Certiorari<br><br>2013 TSPR 152<br><br>189 DPR ____ |

Número del Caso: AC-2011-112


Fecha: 23 de diciembre de 2013


Tribunal de Apelaciones: Región Judicial de San Juan


Abogado de la Parte Peticionaria:

        Lcdo. Francisco González Magaz


Oficina de la Procuradora General:

        Lcda. Lisa M. Durán Ortíz
        Subprocuradora General

        Lcda. Jannelle Laforet Matos
        Procuradora General Auxiliar


Materia: Ley de Derechos Civiles Federal – Jurisdicción de los tribunales para atender, en primera instancia, reclamación bajo la Sección

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramonita Colón Rivera; María
E. Crespo Virella, et al.

    Peticionarios

      v.

Hon. César Rey Hernández; en
su capacidad personal y en su
capacidad oficial como
Secretario del Departamento de
Educación de Puerto Rico, et al.

    Recurridos

AC-2011-112

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 23 de diciembre de 2013.

El recurso que atendemos hoy nos ofrece la oportunidad de pronunciarnos sobre una controversia de gran relevancia. En esencia, debemos resolver si cuando un empleado público tiene una causa de acción al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, 42 U.S.C.A. sec. 1983, por alegado discrimen político en el empleo, le corresponde presentar su reclamación ante la Comisión Apelativa del Servicio Público

(CASP)[1] o puede acudir directamente al Tribunal de Primera Instancia.

Luego de examinar la jurisprudencia federal y estatal, así como los parámetros estatutarios y reglamentarios de la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH), ahora CASP, y las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos, somos del criterio que el empleado público reclamante puede acudir al foro de instancia con su causa de acción al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, por alegado discrimen político en el empleo. Así, concluimos que no procede devolver el caso a CASP, como dispuso el Tribunal de Apelaciones, sino que el foro con jurisdicción para atender los reclamos de la parte peticionaria es el tribunal de instancia. Por ende, revocamos la sentencia emitida por el tribunal apelativo intermedio y remitimos el caso al foro de instancia para que se continúen los procedimientos judiciales conforme a lo aquí resuelto.

I

En este litigio, la parte peticionaria está compuesta por un grupo de diez supervisores no docentes del Departamento de Educación y la entidad sin fines de lucro

---

[1] En virtud del Plan de Reorganización Núm. 2 de 26 de julio de 2010 se creó la Comisión Apelativa del Servicio Público (CASP) para fusionar la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

Educadores Puertorriqueños en Acción, Inc., la cual -según se expone en la demanda- se dedica a organizar y proteger los derechos de los maestros, supervisores y empleados del Departamento de Educación.[2] Mientras, la parte recurrida la integran el Estado Libre Asociado de Puerto Rico (Estado), el entonces Secretario del Departamento de Educación, Dr. César Rey Hernández, la Dra. Lizzette Pillich Otero, ex Secretaria Auxiliar de Recursos Humanos del Departamento de Educación, y la Sra. Ileana Mattei Látimer, entonces Sub-Secretaria de Administración de la mencionada agencia gubernamental.[3]

El 9 de diciembre de 2004, la parte peticionaria presentó una demanda en contra de la parte recurrida ante el tribunal de instancia. En ésta, la parte peticionaria -cuyos integrantes alegan ser miembros activos e identificados con el Partido Nuevo Progresista (PNP)- adujo que se vio perjudicada cuando el entonces Secretario del Departamento de Educación (Dr. César Rey Hernández) "sin

---

[2] Los supervisores no docentes son: Ramonita Colón Rivera, María E. Crespo Virella, Lyzette Del Valle Lugo, Nitza M. García Narváez, Tenn D. González Irizarry, José A. Lasanta Robles, Sonia I. Nieves Ramírez, Mildred Ortiz Figueroa, Alfredo Rodríguez Leandry y Orlando Santiago Gómez. En la demanda, éstos plantearon que son miembros activos y están identificados con el Partido Nuevo Progresista (PNP).

Este grupo de diez supervisores no docentes y la organización Educadores Puertorriqueños en Acción, Inc. (ambos la parte peticionaria) solicitaron al tribunal de instancia que se les certificara como representantes de la clase compuesta por tres mil supervisores del Departamento de Educación porque, según éstos, han sido discriminados por razones de creencias políticas o asociación política. Véase Apéndice del recurso, págs. 56-58.

[3] A estos tres funcionarios se les demandó en su capacidad personal y oficial.

avisar, sin justa causa, violando los procesos administrativos, en forma subjetiva y políticamente discriminatoria [aprobó] ascensos y aumentos salariales por razones políticas discriminatorias perjudicando a los aquí demandantes".[4]

Entre las alegaciones de la demanda, la parte peticionaria incluyó que "[l]a insoportable situación la ha creado la política pública y directriz administrativa, por el presente Secretario de Educación[,] Hon. César Rey Hernández, implantada por sus alter egos que incluyen a los co-demandados, donde han estado ascendiendo y aumentando los salarios por activismo político en el Partido Popular en el poder".[5] Esto es, según la parte peticionaria, que se aprobaron ascensos y aumentos salariales a compañeros supervisores no docentes que en ese momento ocupaban puestos en clases de igual jerarquía que ellos y que estaban afiliados al Partido Popular Democrático (PPD).[6] La parte peticionaria también señaló que ese desbalance o inequidad creado por la parte recurrida constituye una

---

[4] Véase Apéndice del recurso, pág. 61. Luego de las elecciones generales en noviembre de 2000, hubo un cambio en la administración del gobierno central en enero de 2001 al asumir la gobernación la Hon. Sila M. Calderón Serra. Posteriormente, ésta nombró al Dr. César Rey Hernández como Secretario del Departamento de Educación.

[5] Véase Apéndice del recurso, pág. 60.

[6] En la demanda, la parte peticionaria mencionó que se concedieron "aumentos políticamente discriminatorios" a los siguientes supervisores no docentes: (1) Sr. Pablo Villegas (dos pasos por mérito en 2003 y otros dos en 2004); (2) Sra. Nomayra Sánchez Tirado (dos pasos por mérito en 2003 y otros dos en 2004); y (3) Sra. Carmen Pizarro Millán (una reclasificación con el máximo de tres pasos por mérito en 2003 y otros dos en 2004). Véase Apéndice del recurso, págs. 60-61.

violación de naturaleza constitucional, **pues tanto la Constitución de Puerto Rico como la Constitución de Estados Unidos prohíben el discrimen por razón de creencias políticas o de asociación política, así como una violación a lo dispuesto en la Sección 1983 de la Ley de Derechos Civiles federal,** *supra*.[7]

Por todo lo cual, la parte peticionaria solicitó al foro de instancia que: (1) dictara una sentencia declaratoria en la que estableciera que esos ascensos y aumentos salariales a ciertos supervisores no docentes, por razones políticas, fueron ilegales y discriminatorios; (2) ordenara al Departamento de Educación y a los codemandados a conceder los mismos aumentos salariales que fueron otorgados a dichos supervisores no docentes y ordenara el pago retroactivo de tales aumentos; (3) estableciera que toda culpa y negligencia por la violación de derechos constitucionales corresponde a los codemandados; (4) certificara que los demandantes son genuinos representantes de la clase; y (5) condenara a los codemandados al pago del mismo diferencial que le otorgaron a los otros supervisores, intereses, daños, penalidades, costas y honorarios de abogado.

Allá para julio de 2005, el Estado contestó la demanda en representación del Departamento de Educación y dos de los funcionarios codemandados, el Dr. César Rey

---

[7] Véase Apéndice del recurso, pág. 62.

Hernández y la Sra. Ileana Mattei Látimer.  El Estado negó la alegación sobre discrimen político.

Entre las defensas afirmativas, el Estado esbozó que el Departamento de Educación, como Autoridad Nominadora y patrono de los demandantes, "tuvo razones válidas, legítimas y no discriminatorias para llevar a cabo las acciones que la demandante califica como actos de discrimen y/o represalias en su demanda".[8]  Por todo lo cual, el Estado indicó que procedía la desestimación de la demanda o la paralización de los procedimientos por tratarse de alegaciones "que corresponden y requieren la determinación de la pericia de la agencia administrativa, jurisdicción primaria y/o agotamiento de remedios administrativos".[9]

La otra funcionaria demandada, la Dra. Lizzette Pillich Otero, compareció por derecho propio y contestó la demanda el 15 de agosto de 2005.[10]  Ésta expresó que la determinación sobre retribuir a un empleado es una prerrogativa de la Autoridad Nominadora, por lo que constituye una actuación discrecional.  Además, aclaró que no se viola el principio de mérito ni disposición

---

[8] Véase Apéndice del recurso, pág. 82.

[9] Íd., pág. 83.

[10] Según consta en una declaración jurada incluida con su contestación a la demanda, la Dra. Lizzette Pillich Otero indicó que el 10 de agosto de 2005 se enteró de que era parte de la demanda y que fue emplazada mediante edicto.  Expresó, además, que estuvo ausente del Departamento de Educación durante diez meses, pero comoquiera dicha agencia conocía su dirección y nunca fue notificada del emplazamiento.  Declaró que estaba gestionando los beneficios de la Ley 9 (Ley de Reclamaciones y Demandas contra el Estado, según enmendada, 32 L.P.R.A. sec. 3085). Véase Apéndice del recurso, págs. 95-96.

constitucional alguna, ya que la retribución no es un área esencial al principio de mérito. En particular, apuntó que "[l]a retribución de un empleado se hace tomando en consideración muchos factores individuales de cada empleado, por lo que es totalmente frívolo alegar que el presente es un pleito de clase".[11]

En diciembre de 2010, el Estado solicitó la desestimación de la demanda por entender que la reclamación presentada por la parte aquí peticionaria se relacionaba al principio de mérito, razón por la cual la jurisdicción primaria exclusiva correspondía al foro administrativo -específicamente CASP-. El Estado planteó que las alegaciones sobre violaciones a los derechos constitucionales según expuestas por los demandantes eran incidentales a la impugnación de los ascensos y aumentos de sueldo concedidos a sus compañeros de trabajo que estaban afiliados al PPD. Además, arguyó que la parte peticionaria no estableció en sus alegaciones un agravio de tan patente intensidad que justificara obviar el trámite administrativo, por cuanto el foro de instancia carecía de jurisdicción para atender la controversia planteada y el caso debía desestimarse.

Oportunamente, en enero de 2011 la parte aquí peticionaria presentó su oposición a la moción de desestimación del Estado. En esa oposición, indicó que su reclamación "no enfoca en el principio de mérito, sino en

---

[11] Véase Apéndice del recurso, pág. 88.

una campaña de persecución y discrimen político contra éstos por apoyar al [PNP], manifestado en la negativa de concederle reclasificaciones y aumentos salariales (pasos por méritos y otros)".[12] Añadió que mientras a ellos se le denegaban, "estos mismos beneficios se le concedían a empleados afiliados al [PPD]", por lo que a la luz de estas alegaciones es que se debían tomar en consideración los argumentos de las partes.[13] Asimismo, la parte peticionaria reiteró que sus reclamos emanaban de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 148 *et seq.*, y la Sección 1983 de la Ley de Derechos Civiles federal, *supra*. También argumentó que no procedía agotar los remedios administrativos, pues no se había iniciado un procedimiento ante el foro administrativo.

A su vez, la parte peticionaria mencionó que el Tribunal Supremo federal "ha establecido consistentemente que no es necesario agotar los remedios administrativos previo a presentar una reclamación a tenor con la sección 1983".[14] Para finalizar, planteó que aunque entiende que el asunto jurisdiccional se puede levantar en cualquier momento, expresó que la moción de desestimación presentada por la parte recurrida fue a destiempo, ya que el pleito fue presentado en el 2004, se encontraba en una etapa avanzada de los procedimientos y se habían realizado cerca

---

[12] Véase Apéndice del recurso, pág. 125.

[13] Íd.

[14] Íd., pág. 127.

de 17 deposiciones.[15]    Sobre esto, señaló que sería irrazonable y oneroso tener que presentar su caso ante otro foro, pues debido al tiempo transcurrido cualquier remedio resultaría inadecuado, se les provocaría un daño irreparable y la dilación tornaría en inútil su reclamo.[16] Por todo lo cual, la parte peticionaria solicitó la denegatoria de la petición de desestimación.

Finalmente, el 20 de enero de 2011 (notificada el 24 de enero de 2011) el tribunal de instancia declaró no ha lugar la moción de desestimación y ordenó la continuación del trámite según calendarizado.    Inconforme con la decisión, el 23 de febrero de 2011 la Procuradora General –en representación de la parte aquí recurrida- presentó un recurso de *certiorari* ante el Tribunal de Apelaciones.[17] Posteriormente, el 7 de marzo de 2011 la parte aquí peticionaria presentó su oposición al recurso de *certiorari.*[18]

Así las cosas, el 10 de junio de 2011 –notificada el 20 de junio de 2011- el Tribunal de Apelaciones revocó la

---

[15] Véase Apéndice del recurso, pág. 131.

[16] Íd.

[17] La Procuradora General argumentó que el foro primario había incidido al no desestimar la demanda, cuando por virtud de las disposiciones de la Ley Núm. 184-2004 (Ley 184) conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 1461 *et seq.*, era CASARH (ahora CASP) la que poseía jurisdicción primaria exclusiva para atender las reclamaciones relativas a los ascensos y aumentos salariales a los que la parte peticionaria alegaba tenía derecho.

[18] En síntesis, alegó que no procedía la desestimación por razón de que el pleito era por discrimen político y el tribunal de instancia era el foro con jurisdicción para atenderlo.

resolución recurrida y refirió el caso a CASP para que ese foro continuara con los procedimientos. Asimismo, expresó que el tribunal de instancia retendría jurisdicción exclusivamente sobre la acción en daños y perjuicios.

El foro apelativo intermedio señaló que los demandantes (la parte aquí peticionaria) debían presentar sus reclamos, en primera instancia, ante el foro administrativo facultado para atender los asuntos relativos al principio de mérito, entiéndase CASP, y allí demostrar que son acreedores de los ascensos y aumentos salariales que reclaman.[19] Esto es, que debían agotar los remedios administrativos y luego podrían solicitar revisión judicial si interesaban. A su vez, el Tribunal de Apelaciones añadió que la alegación de discrimen político no era suficiente para preterir el cauce administrativo y tampoco se había demostrado que hubiese un agravio de tan grave y patente intensidad que justificara eludir el cauce administrativo de manera que procediera un reclamo al amparo de los derechos constitucionales.[20]

El 5 de julio de 2011 la parte aquí peticionaria solicitó reconsideración al Tribunal de Apelaciones. Argumentó que: (1) la Ley Núm. 184-2004 conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico

---

[19] Véase Apéndice del recurso, pág. 23.

[20] Íd.

(Ley 184), 3 L.P.R.A. sec. 1461 *et seq.*, no establece jurisdicción primaria exclusiva de CASARH para atender sus reclamos; (2) la reclamación es por violación de derechos constitucionales por discrimen político en el sector público, por lo que el foro con jurisdicción para atenderla es el tribunal de instancia; y (3) según la jurisprudencia federal, no es necesario agotar remedios administrativos antes de presentar una reclamación conforme a la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*. Por todo lo cual, solicitó al tribunal apelativo intermedio que reconsiderara su decisión y, en consecuencia, confirmara la orden del foro de instancia que denegó la moción de desestimación presentada por la parte aquí recurrida y que ordenó la continuación de los procedimientos.

Allá para el 11 de agosto de 2011 -notificada el 19 de agosto de 2011-, el Tribunal de Apelaciones ordenó a la Procuradora General que se expresara sobre la solicitud de reconsideración presentada. En particular, el foro apelativo intermedio requirió expresarse sobre dos aspectos particulares: (1) que la Ley 184 no concede jurisdicción exclusiva a CASARH para atender reclamos como los incluidos en la demanda; y (2) que el caso de autos trata sobre un caso de discrimen político, por lo que debe ser el foro de instancia y no CASARH el que atienda y dilucide el mismo.[21]

En cumplimiento de orden, el 19 de septiembre de 2011 la Procuradora General presentó un escrito de oposición a

---

[21] Véase Apéndice del recurso, pág. 32.

la reconsideración, en el que indicó lo siguiente: "[c]iertamente, la Ley Núm. 184, *supra*, no establece de forma específica que la CASARH, ahora CASP, tendrá jurisdicción primaria exclusiva para atender los asuntos relativos al principio de mérito tales como el pago de salarios y los ascensos. Sin embargo, conforme a lo resuelto por el Tribunal Supremo en Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257 (1996), lo anterior no es óbice para que se concluya que en efecto la Asamblea Legislativa le delegó a la agencia esa facultad".[22] Añadió que las alegaciones de discrimen político presentadas por la parte aquí peticionaria "están supeditadas a la procedencia o no de los ascensos y los aumentos salariales, los cuales, por ser áreas esenciales del principio de mérito, son de jurisdicción exclusiva de la CASARH, ahora CASP".[23]

Así pues, la Procuradora General solicitó que se declarara no ha lugar la moción de reconsideración y se desestimara la demanda por falta de jurisdicción sobre la materia. Sobre esto último planteó que CASARH perdió jurisdicción para adjudicar los asuntos relacionados con el principio de mérito, pues la parte aquí peticionaria no presentó su recurso ante el foro administrativo en el término jurisdiccional. Ante esa situación, alegó que la decisión de la Autoridad Nominadora (Departamento de Educación) de no conceder los ascensos y los aumentos

---

[22] Véase Apéndice del recurso, pág. 208.

[23] Íd., pág. 213.

salariales reclamados advino final y firme, lo que impedía que el foro de instancia pudiera atender la controversia sobre la alegación de discrimen político.[24]

Luego, el 29 de septiembre de 2011 la parte peticionaria replicó y enfatizó en que las reclamaciones de discrimen no se supeditan a la procedencia de los ascensos y los aumentos salariales, sino que lo principal es el reclamo por discrimen político y su evidencia. Asimismo, planteó que "habiendo establecido un caso *prima facie* de discrimen político, no se puede considerar éste como uno de impugnación de determinaciones laborales o de mérito".[25]

Luego de evaluar los planteamientos de ambas partes, el 11 de octubre de 2011 —notificada el 18 de octubre de 2011— el Tribunal de Apelaciones declaró no ha lugar a la moción de reconsideración presentada por la parte aquí peticionaria (los empleados demandantes). Planteó que no aplicaba la "defensa de Mt. Healthy" sobre caso *prima facie* de discrimen político porque lo formulado por la parte peticionaria es una "mera alegación de discrimen".[26] A su vez, reiteró que los reclamos de ascensos y aumentos salariales constituyen áreas esenciales al principio de mérito, por lo que conforme a la Ley 184 el foro con jurisdicción es CASP. Añadió que corresponderá a dicho ente administrativo adjudicar si los demandantes "son

---

[24] Véase Apéndice del recurso, pág. 213.

[25] Íd., pág. 221.

[26] Íd., pág. 34.

merecedores de los ascensos y aumentos salariales que reclaman y probar que hubo criterios políticos para negarles a éstos sus reclamos mientras se beneficiaba a otros empleados por igual razonamiento".[27]

Inconforme con la determinación del foro apelativo intermedio, el 17 de noviembre de 2011 la parte peticionaria presentó un recurso de apelación ante esta Curia. Se señala la comisión de los errores siguientes:

> (1) Erró el Honorable Tribunal de Apelaciones al considerar el recurso de *certiorari* y aceptar los escritos presentados por la parte demandada.
>
> (2) Erró el Honorable Tribunal de Apelaciones al determinar que la CASARH, ahora la CASP, posee jurisdicción exclusiva para entender en las reclamaciones de la parte demandante por ser relativas a ascensos y aumentos salariales y no sobre discrimen político que debe ventilarse ante el Tribunal de Primera Instancia.

Acogimos el recurso como una Petición de *certiorari* y expedimos el auto el 10 de febrero de 2012. La parte peticionaria presentó su alegato el 18 de abril de 2012 y la Procuradora General presentó su alegato en oposición el 2 de julio de 2012. Posteriormente, el 10 de julio de 2012 la parte peticionaria presentó una réplica al alegato en oposición. Así las cosas, el 3 de agosto de 2012 el caso quedó sometido para su adjudicación. Con el beneficio de las comparecencias de ambas partes, resolvemos.

---

[27] Véase Apéndice del recurso, pág. 35.

II

A. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V, "establece los fundamentos por los que una parte puede solicitar la desestimación de una demanda presentada en su contra, a saber: falta de jurisdicción sobre la materia o la persona, insuficiencia del emplazamiento o su diligenciamiento, dejar de exponer una reclamación que justifique la concesión de un remedio o dejar de acumular una parte indispensable".[28]  Al evaluar una moción de desestimación, los tribunales tienen que dar por ciertas y buenas todas las alegaciones fácticas incluidas en la demanda.  Torres, Torres v. Torres et al., 179 D.P.R. 481, 501 (2010).  Además, dichas alegaciones hay que interpretarlas de la forma más favorable a la parte demandante.  Harguindey Ferrer v. U.I., 148 D.P.R. 13, 30 (1999).  Así pues, para desestimar un caso por falta de jurisdicción sobre la materia "es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo".  Íd.

Nótese que al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y "únicamente procedería cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante".[29]

---

[28] Informe de Reglas de Procedimiento Civil, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, marzo 2008, pág. 134.

[29] R. Hernández Colón, Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.

Conforme la Regla 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. V, una vez surge -por indicación de las partes o de algún otro modo- que el tribunal carece de jurisdicción, procede la desestimación del pleito.[30]

## B. La jurisdicción de la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH), ahora la Comisión Apelativa del Servicio Público (CASP)

La jurisdicción y el funcionamiento de las agencias administrativas se derivan y, a su vez, se delimitan por su ley habilitadora y su reglamento. Al aprobar la ley orgánica de una agencia, la Asamblea Legislativa autoriza y delega a ésta los poderes necesarios para que actúe de acuerdo con el propósito que persiguió el legislador con su creación.[31] Asimismo, en múltiples ocasiones hemos expresado que "al interpretar el alcance de los poderes delegados a una agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva de su estatuto habilitador".[32]

En virtud de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1301 *et seq.* (derogada), la Legislatura creó la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Posteriormente, dicha

---

[30] Véase Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 936 (2011).

[31] D.A.Co. v. Fcia. San Martín, 175 D.P.R. 198, 203 (2009). Véanse, además: DACo v. AFSCME, 185 D.P.R. 1, 12 (2012); Amieiro González v. Pinnacle Real Estate, 173 D.P.R. 363, 371 (2008); Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 211 (2002).

[32] D.A.Co. v. Fcia. San Martín, *supra*, págs. 203-204.

ley fue derogada mediante la aprobación de la Ley Núm. 184-2004 (Ley 184), según enmendada, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 L.P.R.A. sec. 1461 *et seq.* La Ley 184 estableció la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) como el organismo adjudicativo sustituto de JASAP y le confirió jurisdicción apelativa sobre todas las reclamaciones de los empleados públicos no organizados sindicalmente, las cuales se relacionaran con el principio del mérito.[33] Conforme a esta ley, las acciones relacionadas al principio del mérito son: clasificación de puestos, reclutamiento y selección, ascensos, traslados y descensos, adiestramiento, y retención.[34]

Al amparo de la Ley Núm. 182-2009, conocida como la Ley de Reorganización y Modernización de la Rama Ejecutiva 2009, 3 L.P.R.A. sec. 8821 *et seq.*, se creó el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 L.P.R.A. Ap. XIII. Mediante este último se estableció la nueva Comisión Apelativa del Servicio Público (CASP), en la cual se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público

---

[33] González y Otros v. Adm. de Corrección, 175 D.P.R. 598, 607-608 n. 5 (2009).

[34] 3 L.P.R.A. sec. 1462.

(CRTSP).[35]

Específicamente, CASP es un organismo cuasi-judicial en la Rama Ejecutiva, que se especializa en asuntos obrero patronales y del principio de mérito. Dicha entidad atiende casos laborales, querellas y asuntos de administración de recursos humanos, ello en cuanto a los empleados cobijados por la Ley Núm. 45-1998 (Ley 45) conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1451 *et seq.*, y aquellos empleados cubiertos por la Ley 184.[36]

Por su parte, en el Art. 12 del Plan de Reorganización Núm. 2 de 2010 se especificó cuál sería la jurisdicción apelativa de CASP. Dicho artículo expresa lo siguiente:

> La Comisión tendrá jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:
>
> (a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la "Ley de Municipios Autónomos", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales

---

[35] Mediante el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 L.P.R.A. Ap. XIII, se derogó el Art. 13 de la Ley 184 que establecía la CASARH.

[36] Véase DACo v. AFSCME, 185 D.P.R. 1, 12 n. 12 (2012).

para dar cumplimiento a la legislación y normativa aplicable;

(b) cuando un ciudadano alegue que una acción o decisión le afecta su derecho a competir o ingresar en el Sistema de Administración de los Recursos Humanos, de conformidad al principio de mérito;

(c) cuando un empleado irregular alegue que la autoridad nominadora se ha negado injustificadamente a realizar su conversión a empleado regular de carrera, según dispone la Ley Núm. 110 de 26 de junio de 1958, según enmendada, conocida como "Ley de Empleados Irregulares";

(d) cuando un Administrador Individual alegue que una acción, omisión o decisión de la Oficina es contraria a las disposiciones generales de la [Ley 184], según enmendada, en las áreas esenciales al principio de mérito;

(e) la Comisión tendrá jurisdicción sobre el personal docente y clasificado del Departamento de Educación y el personal civil de la Policía de Puerto Rico, que no estén sindicados bajo la [Ley 45], según enmendada;

(f) la Comisión podrá tener jurisdicción apelativa voluntaria sobre los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de la [Ley 184], según enmendada, y las corporaciones públicas que operen como negocio privado que se sometan voluntariamente al proceso apelativo y adjudicativo de la Comisión. El procedimiento y costo para que puedan acogerse a esta jurisdicción se establecerá, mediante reglamento;

(g) cualquier asunto proveniente u originado de la administración de los recursos humanos no cubierto en otras leyes o convenios colectivos.

En fin, CASP se creó como el ente adjudicativo con jurisdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los

municipios en cuanto a las acciones de personal relacionadas con el principio de mérito. Así se atendió el propósito jurídico medular de que sea la agencia especializada en determinado asunto la que lo atienda, conforme a la autoridad delegada por ley.[37]

C. La Ley de Derechos Civiles federal y el discrimen político

La Sec. 1983 de la Ley de Derechos Civiles federal, 42 U.S.C.A. sec. 1983, establece –en lo pertinente- que:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer´s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

El mencionado estatuto federal constituye "un vehículo para que los ciudadanos puedan hacer valer los derechos que confieren la Constitución y las leyes de Estados Unidos frente a aquellas personas que abusan de su poder cuando actúan so color de autoridad estatal".[38] Tal como ha expresado el Tribunal Supremo de Estados Unidos, es importante recalcar que la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, no constituye en sí una

---

[37] Arroyo v. Policía de P.R., 143 D.P.R. 265, 279 (1997).

[38] Leyva et al. v. Aristud et al., 132 D.P.R. 489, 500 (1993).

fuente de derechos sustantivos, sino que provee un mecanismo para vindicar cualesquiera derechos civiles que se hayan conferido. Así, el primer paso en este tipo de reclamación es identificar cuál es el derecho constitucional alegadamente infringido.[39]

Es conocido que los tribunales estatales podemos ejercer jurisdicción concurrente sobre pleitos basados en la Constitución, las leyes y los tratados de Estados Unidos, a excepción de cuando dicha jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales.[40] En lo que respecta a la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, hace más de tres décadas expresamos en Acevedo v. Srio. Servicios Sociales, 112 D.P.R. 256 (1982), que "no se desprende del texto o el historial legislativo del estatuto intención alguna del Congreso [de Estados Unidos] de conferirles a los tribunales federales jurisdicción exclusiva sobre este género de casos".[41] Asimismo, allí indicamos que el Tribunal Supremo de Estado Unidos ha establecido que las cortes estatales "pueden ejercer jurisdicción concurrente sobre pleitos fundados en la Sec. 1983".[42]

---

[39] Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-394 (1989); Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).

[40] Acevedo v. Srio. Servicios Sociales, 112 D.P.R. 256, 259 (1982). Véase, además, SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 679 (2009).

[41] Acevedo v. Srio. Servicios Sociales, *supra*, pág. 259.

[42] Íd., pág. 260.

Así pues, en aquella ocasión en 1982 resolvimos que el sistema judicial de Puerto Rico tiene jurisdicción concurrente para ventilar pleitos al amparo de la Ley de Derechos Civiles federal. Debido a que ésta es una causa de acción federal sobre la que ejercemos jurisdicción concurrente, los tribunales de Puerto Rico "estamos obligados a seguir nuestras propias opiniones anteriores y las decisiones del Tribunal Supremo de los Estados Unidos".[43]

Conforme a la jurisprudencia federal, un demandante puede prevalecer en su reclamo por violación a sus derechos civiles al amparo del mencionado estatuto si demuestra que el demandado actuó so color de autoridad y dicha actuación le privó de los derechos garantizados por la Constitución y las leyes de Estados Unidos.[44] Así, hemos mencionado que "en Estados Unidos se han llevado acciones bajo la aludida sección en violación de la Primera Enmienda cuando se alega haber sido objeto de actos de discrimen político".[45] Es decir, que se ha reconocido que en virtud de la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, pueden presentarse acciones civiles en aquellos casos en los que funcionarios gubernamentales hayan incurrido en actuaciones discriminatorias en el empleo, ello en violación a los derechos de libertad de expresión y de asociación.

---

[43] Leyva et al. v. Aristud et al., *supra*, pág. 500 n. 5.

[44] Íd., pág. 501.

[45] SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 692 (2009).

Haciendo referencia al importante caso de <u>Rutan v.</u> <u>Republican Party of Illinois</u>, 497 U.S. 62 (1990), esta Curia declaró que el Tribunal Supremo de Estados Unidos "hizo meridianamente claro que el discrimen político no era permisible no sólo en relación a despidos o [cesantías] de empleados públicos, sino además con respecto a otras prácticas como la contratación, el ascenso y el traslado de tales empleados". (Énfasis omitido).[46] En particular, la Corte Suprema federal indicó lo siguiente:

> We therefore determine that promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.[47]

A su vez, el Tribunal Supremo federal añadió lo siguiente en el mencionado caso de <u>Rutan</u>:

> The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate.[48]

Siguiendo la doctrina federal esbozada en <u>Branti v.</u> <u>Finkel</u>, 445 U.S. 507 (1980), dos años después resolvimos en <u>Ramos v. Srio. de Comercio</u>, 112 D.P.R. 514, 516 (1982), que no se puede discriminar contra un empleado público por sus creencias políticas "a menos que el gobierno pueda demostrar 'un interés superior' de importancia vital que

---

[46] <u>Aponte Burgos v. Aponte Silva</u>, 154 D.P.R. 117, 125 (2001).

[47] <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 75 (1990).

[48] Íd., pág. 76.

requiera que las creencias privadas de la persona coincidan con la autoridad nominadora".

Más adelante, en Aponte Burgos v. Aponte Silva, 154 D.P.R. 117, 121 (2001), nos expresamos acerca de la importante protección que ofrece la Constitución federal en contra del discrimen político en el empleo público. Allí expusimos lo siguiente:

> Desde hace varias décadas, el Tribunal Supremo de Estados Unidos, interpretando la Constitución federal, ha hecho claro que las libertades de la Primera Enmienda son tan fundamentales que, a menos que ello sea esencial al cargo, *nadie* puede ser excluido del servicio público sólo por razón de sus ideas políticas. (Énfasis en el original).

Como manifestamos en Abrams Rivera v. E.L.A., 178 D.P.R. 914, 935 (2010), tanto la Constitución de Estados Unidos como la Constitución de Puerto Rico proveen protección contra el discrimen por motivo de ideas políticas. Y, además, en el contexto del empleo público dicha protección cobija a los empleados permanentes, irregulares, transitorios y de confianza. Íd., págs. 935-936.[49] Una demanda por discrimen político es una acción civil ordinaria en la cual la parte demandante tiene el peso y la obligación primaria de presentar prueba, para lo

---

[49] Véanse, además: Aponte Burgos v. Aponte Silva, 154 D.P.R. 117 (2001), Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982); Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1972).

que puede utilizar evidencia circunstancial y las presunciones que le favorezcan.[50]

D. Las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos y las acciones al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, 42 U.S.C.A. sec. 1983

En nuestro ordenamiento jurídico existen unas normas de autolimitación judicial, entre las cuales se encuentran las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos. Estas doctrinas "tienen el fin común de coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales".[51] En particular, hemos expresado que ambas "cumplen el objetivo de mantener un adecuado balance y distribución de poder y tareas entre las agencias administrativas y el poder judicial".[52]

Como hemos reiterado, la doctrina de jurisdicción primaria pretende determinar si es a la agencia administrativa o al tribunal a quien corresponde la intervención inicial en una controversia.[53] Mientras, la doctrina de agotamiento de remedios administrativos se circunscribe a que los tribunales discrecionalmente se abstienen de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los

---

[50] McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113, 140 (1989).

[51] Guzmán y otros v. E.L.A., 156 D.P.R. 693, 711 (2002); Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 353 (1988).

[52] Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 722 (1982).

[53] Íd.

remedios administrativos disponibles, de manera tal que la determinación administrativa refleje la postura final de la agencia.[54]

Así, en Mun. de Caguas v. AT & T, 154 D.P.R. 401, 408 (2001) expresamos que:

> Debe notarse que de ordinario la norma de agotamiento de remedios administrativos se aplica en casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. Es decir, la norma se invoca usualmente *para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste* y que recurrió luego al foro judicial aunque aún tenía remedios administrativos disponibles. (Énfasis en el original).

En relación con las doctrinas mencionadas, en E.L.A. v. 12,974.78 metros cuadrados, 90 D.P.R. 506, 513 (1964), señalamos lo siguiente:

> [l]a doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administrativos antes de acudirse a los tribunales, aunque ambas son germanas y persiguen el mismo fin: poner orden en la administración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. La doctrina que requiere que se agoten los procedimientos administrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria determina qué organismo debe hacer la determinación inicial del asunto. (Citas omitidas).

---

[54] Procuradora Paciente v. MCS, 163 D.P.R. 21, 35 (2004); Rivera v. E.L.A., 121 D.P.R. 582, 593 (1988).

De igual manera, el profesor Demetrio Fernández Quiñones –haciendo referencia a Quiñones v. A.C.A.A., 102 D.P.R. 746 (1974)- plantea que "existe una aparente confusión de parte de la mayoría del Tribunal en lo que respecta a si el problema planteado es de jurisdicción primaria o de agotamiento de los recursos administrativos".[55] Añadió que "[c]on base en el hecho de que se presentó la acción directamente ante el tribunal y se hace caso omiso de la agencia, es incuestionable que se trata de una cuestión de jurisdicción primaria".[56]

Por otro lado, es importante considerar lo resuelto por el Tribunal Supremo de Estados Unidos en Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 500 (1982). Allí, el Tribunal Supremo Federal, citando a Steffel v. Thompson,[57] indicó lo siguiente: "[w]hen federal claims are premised on [§1983] -as they are here- we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights". Así, la Corte Suprema federal declaró categóricamente en Patsy que el agotar los remedios administrativos no es un prerrequisito para una acción al amparo de la Sección 1983 de la Ley de Derechos Civiles

---

[55] D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Forum, 2013, pág. 613.

[56] Íd.

[57] 415 U.S. 452, 472-473 (1974).

federal.[58]  El Alto Foro federal expresó lo siguiente en aquella ocasión:

> [T]his Court has stated categorically that exhaustion is not a prerequisite to an action under §1983, and we have not deviated from that position in the 19 years since McNeese [v. Board of Education, 373 U.S. 668 (1963)].[59]

En Pierson Muller I v. Feijoó, 106 D.P.R. 838, 852 (1978) (En reconsideración), nos expresamos en términos de que "[e]l amplio ámbito de [la] Ley de Derechos Civiles de Puerto Rico, con raíz filosófica y filológica en 42 U.S.C. sec. 1983 y con igual eficacia que la Ley del Congreso, provee en el Tribunal General de Justicia de Puerto Rico el foro apropiado para la vindicación del derecho del individuo frente al Gobierno". Asimismo, enfatizamos que "[f]ue a los tribunales que la Asamblea Legislativa remitió la reivindicación de derechos fundamentales garantizados por la Constitución". (Énfasis suplido). Íd., pág. 851.

A finales de los años 90, en Igartúa de la Rosa v. A.D.T., 147 D.P.R. 318, 332 (1998), indicamos que el empleado público que reclame a su patrono una indemnización

---

[58] Es importante mencionar que en Booth v. Churner, 532 U.S. 731 (2001), el Tribunal Supremo federal estableció que en el caso de los prisioneros que presenten demandas por violación de derechos civiles éstos sí deberán agotar los remedios administrativos conforme lo dispone 42 U.S.C.A. Sec. 1997e(a), según enmendada por la "Prison Litigation Reform Act of 1995". Dicha sección expone lo siguiente:
  §1997e. Suits by prisoners
  (a) Applicability of administrative remedies
      No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[59] Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 500-501 (1982).

por violación a sus derechos civiles "queda excusado de acudir en primera instancia al foro administrativo para reclamar cualquier responsabilidad civil de dicho patrono". (Énfasis suplido). En ese caso la demandante fundamentó su reclamación en que se violaron sus derechos civiles al ser discriminada por su afiliación política. Invocó la Ley de Derechos Civiles federal y la estatal, entre otras leyes.

Con particular pertinencia a la controversia ante nuestra consideración, el profesor Fernández Quiñones expresa que la excepción a la doctrina de agotamiento de remedios administrativos basada en la violación de derechos civiles "ha sido ubicada erróneamente… Lo que en ella se establece trata sobre la ausencia de jurisdicción y no de una excepción a la doctrina del agotamiento de los remedios administrativos: 'La reivindicación de los derechos constitucionales corresponde y puede reclamarse en primera instancia en los tribunales de justicia, sin que tenga jurisdicción sobre ello el foro administrativo'". (Citas omitidas).[60]

E. La Ley Núm. 64-2006

El 17 de febrero de 2006 se aprobó la Ley Núm. 64-2006 (Ley 64) con el propósito de añadir un inciso (12) a la Sección 13.9 del Art. 13 de la Ley Núm. 184-2004 conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico (Ley 184), 3 L.P.R.A. sec. 1461 *et seq.* Según

---

[60] Fernández Quiñones, op cit., pág. 630.

la Exposición de Motivos de la Ley 64, la inclusión de dicho inciso fue para facultar a CASARH (ahora CASP) "a conceder indemnizaciones económicas por los daños y perjuicios sufridos por los servidores públicos de Puerto Rico". Esta Ley 64 comenzó a regir a los 180 días de su aprobación, es decir en agosto de 2006.

El inciso (12) de la Sección 13.9 del Art. 13 de la Ley 184 lee de la siguiente manera:

Sección 13.9.-FACULTADES DE LA COMISIÓN

La Comisión tendrá, entre otras, las siguientes facultades:

(1)…
(12) La Comisión tendrá facultad para conceder indemnizaciones por daños y perjuicios e imponer multas administrativas en todo tipo de discrimen que sea probado por los empleados que acuden ante este foro, sin menoscabo de los derechos de los servidores públicos de recurrir al foro judicial para el reclamo de daños y perjuicios cuando no lo reclamen ante la Comisión Apelativa.

Actualmente la mencionada disposición constituye el inciso (j) del Art. 8 del Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 L.P.R.A. Ap. XIII.

III

Atendemos el primer error señalado por la parte peticionaria, específicamente en torno a que el Tribunal de Apelaciones erró al considerar el recurso de *certiorari* presentado por la parte aquí recurrida y al aceptar un escrito presentado por dicha parte. En particular, la

parte peticionaria planteó que el foro apelativo intermedio carecía de jurisdicción para atender el recurso debido a que la parte aquí recurrida no incluyó copia de la demanda en su Petición de *certiorari* ante ese tribunal, por lo que no se había perfeccionado el recurso.

En su Alegato en oposición, la parte aquí recurrida aceptó que, por error e inadvertencia, no incluyó copia de la demanda como parte del apéndice del recurso que presentó en el Tribunal de Apelaciones. No obstante, señaló que el defecto fue subsanado por la parte aquí peticionaria, ya que ésta incluyó copia de la demanda en su oposición al recurso.

Concluimos que la omisión de incluir el mencionado documento en el apéndice del recurso no provocó un impedimento real y meritorio para que el foro apelativo intermedio atendiera el caso en los méritos, pues el documento fue suplido posteriormente por la parte aquí peticionaria.[61] Esto es, dicha omisión no privó de jurisdicción al Tribunal de Apelaciones, foro que contó con todos los elementos de juicio necesarios para considerar el asunto planteado ante su consideración. Por todo lo anterior, no se cometió el primer error señalado en la Petición de *certiorari*.

---

[61] Como sabemos, la Regla 16(E) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 16(E), dispone que "[l]a omisión de incluir documentos del apéndice no será causa automática de desestimación del recurso". En varias ocasiones hemos expresado que la desestimación como sanción debe ser el último recurso y "cuando el tribunal utiliza dicho mecanismo procesal en casos de incumplimiento con su Reglamento, debe cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el tribunal pueda atender el caso en los méritos". Román et als. v. Román et als., 158 D.P.R. 163, 167 (2002).

En torno al segundo error, nos corresponde determinar si la parte peticionaria, que entabló una causa de acción al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, por alegado discrimen político en el empleo público, le correspondía presentar su reclamación ante CASP o podía acudir directamente al foro de instancia.

Luego de evaluar tanto el expediente del caso como los argumentos esbozados por ambas partes, concluimos que el foro apelativo intermedio sí erró en su determinación de referir el caso a CASP.

En Abrams Rivera v. E.L.A., *supra*, pág. 935, reiteramos que "es función ineludible de este Tribunal el dar vigencia a las garantías constitucionales establecidas en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico para la protección de los derechos individuales y esto incluye la garantía constitucional contra discrímenes por motivo de ideas políticas".[62]

Por todo lo anterior, resolvemos que un empleado público que tenga una reclamación al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, por alegado discrimen político en el empleo, puede acudir directamente al tribunal de instancia a presentar su

---

[62] En dicho caso el demandante presentó una reclamación por discrimen político al ser despedido de su puesto de ingeniero en el Departamento de Transportación y Obras Públicas de Puerto Rico. Aunque la controversia se relacionaba con el asunto de selección y remoción de un empleado público, concluimos que la controversia principal era el alegado discrimen político, por lo que correspondía a los tribunales atender la reclamación.

reclamo.   En  consecuencia,  no  procedía  la  moción  de desestimación presentada por el Estado en el caso de autos. Véanse: Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920 (2011); Torres, Torres v. Torres et al., 179 D.P.R. 481 (2010); Harguindey Ferrer v. U.I., 148 D.P.R. 13 (1999).

IV

Por  los  fundamentos  antes  expuestos,  se  revoca  la decisión del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos consistentes con este dictamen.

Se dictará sentencia de conformidad.


                              Erick V. Kolthoff Caraballo
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramonita Colón Rivera; María
E. Crespo Virella, et al.

    Peticionarios

      v.

                              AC-2011-112

Hon. César Rey Hernández; en
su capacidad personal y en su
capacidad oficial como
Secretario del Departamento de
Educación de Puerto Rico, et al.

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 23 de diciembre de 2013.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la decisión del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos consistentes con este dictamen.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo