ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| | | |
|---|---|---|
| FEDERACIÓN DE EMPLEADOS GERENCIALES DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, representada por su presidente, Juan Osorio Flores, en representación de todos sus miembros y de sus miembros individuales; MARÍA DE LA CRUZ OLIVERAS DÍAZ; LILLIAN SÁNCHEZ ROMÁN y FÉLIX RODRÍGUEZ MERCADO<br><br>Apelantes<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, por conducto de su Administrador, Jesús M. Rodríguez Rosa<br><br>Apelado | KLAN202300220 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.: SJ2022CV08617<br><br><br>Sobre: Interdicto Preliminar y Permanente; Sentencia Declaratoria |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2024.

Comparece la Federación de Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado (en adelante, parte apelante y/o Federación), representada por su presidente el señor Juan Osorio Flores, en representación de todos sus miembros y de sus miembros individuales: las señoras María de la Cruz Oliveras Díaz y Lillian Sánchez Román, y el señor Félix Rodríguez Mercado, mediante un recurso de *Apelación,* para solicitarnos la revisión de la *Sentencia* emitida y notificada el 10 de febrero de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en

Número Identificador

SEN2024_____

adelante, TPI), mediante la cual desestimó la *Demanda* incoada, con perjuicio.[1]

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I**

El 3 de octubre de 2022, la Federación presentó una *Demanda* sobre interdicto preliminar y permanente y sentencia declaratoria contra la Corporación del Fondo del Seguro del Estado (en adelante, parte apelada y/o CFSE), al amparo del Artículo 676 del Código de Enjuiciamiento Civil y de las Reglas 57.2 y 59.1 de las Reglas de Procedimiento Civil.[2] La Federación es una organización *bonafide* que representa a empleados gerenciales de carrera de la CFSE al amparo de la Ley Núm. 134 de 19 de julio de 1960.[3]

Se esbozó que, el 3 de agosto de 2020, se aprobó la Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos (en adelante, Ley Núm. 80-2020), a los fines de establecer un Programa de Retiro Incentivado (en adelante, Programa) mediante el cual ciertos empleados elegibles del Gobierno de Puerto Rico (en adelante, Gobierno) pudieran, voluntariamente, separarse de forma incentivada de su empleo antes de la edad de retiro.[4] Adujo que, la Junta de Supervisión y Administración Financiera para Puerto Rico (en adelante, JSF) indicó que permitiría la implementación parcial del Programa, con respecto aquellos empleados cuyos puestos se consideraban no esenciales para la continuación de servicios a la ciudadanía, y que, por consiguiente, podrían ser eliminados para lograr los ahorros necesarios. En consecuencia, la JSF requirió al Gobierno designar los puestos de

---

[1] Apéndice de la parte apelante, a las págs. 188-203.
[2] *Id.,* a las págs. 1-25; 32 LPRA § 3422, Art. 676; 32 LPRA Ap. V, R. 57.2 y R. 59.1.
[3] Ley para Autorizar el Descuento de Cuotas de Asociaciones, Federaciones, o Uniones de los Empleados del Gobierno de Puerto Rico, Ley Núm. 134 de 19 de julio de 1960, según enmendada, 3 LPRA § 702 Inciso (a) *et seq.*
[4] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*

los empleados no esenciales participantes del Programa, así como los puestos eliminados propuestos, y certificar que las agencias e instrumentalidades gubernamentales serían capaces de mantener servicios públicos adecuados después de la eliminación permanente de los mismos.

La Federación también expuso que el Gobierno acordó que notificaría a los empleados que ocupan los puestos que se acordó eliminar antes del 28 de julio de 2022, de que sus puestos serían eliminados permanentemente, conforme a su elección previa de retiro temprano, a menos que optaran por no participar en o antes del 11 de agosto de 2022. Adujo que, dicha determinación permitiría a unos 1,700 empleados no esenciales de la Rama Ejecutiva que cotizaron al retiro bajo la Ley Núm. 447 de 15 de mayo de 1951 y la Ley Núm. 1 de 16 de febrero de 1990, pudieran retirarse con el cincuenta por ciento (50%) de su salario.[5] A esos efectos, alegó que, a inicios del mes de agosto del año 2022, la CFSE envió cartas a varios empleados mediante las cuales les notificaron que cumplían con los requisitos para acogerse a los beneficios de la Ley Núm. 80-2020.[6] Sin embargo, alegó que, a la mayoría de los empleados que llenaron el *Formulario de Elección Programa de Retiro Incentivado*, no se les había informado el resultado de la evaluación. Entre dichos empleados se encuentran los apelantes, las señoras María de la Cruz Oliveras Díaz y Lillian Sánchez Román, y el señor Félix Rodríguez Mercado.

Como remedio, en la *Demanda* se solicitó: (i) que se informara a los empleados sobre la aprobación o denegación de su solicitud de acogerse a la Ley Núm. 80-2020,[7] con expresión de los términos y el

---

[5] Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 LPRA § 761 *et seq*; Sistema de Retiro de los Empleados del Gobierno y sus Instrumentalidades – Enmiendas, Ley Núm. 1 de 16 de febrero de 1990.
[6] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq*.
[7] *Id*.

foro correspondiente para solicitar revisión; y, (ii) que se proveyera a la parte apelante información sobre lo siguiente: (a) el procedimiento interno y/o criterios utilizados por la CFSE para definir lo que se consideran servicios públicos esenciales para los fines de la Ley Núm. 80-2020,[8] (b) una lista de los puestos eliminados propuestos por la CFSE y sometida a la JSF, (c) una lista de los puestos que la CFSE determinó que no eran esenciales y que cualificaban para los fines de la Ley Núm. 80-2020,[9] y (d) una lista con nombre, puesto y región de los empleados a los cuales la CFSE les notificó que cualificaban para los fines de la Ley Núm. 80-2020.[10] La Federación solicitó, además, una suma por concepto de gastos y honorarios de abogado.

El 18 de octubre de 2022, se celebró la *Vista de Interdicto Preliminar*, en la cual se determinó que la sentencia declaratoria se ventilaría por la vía ordinaria.[11]

Por su parte, el 20 de octubre de 2022, la CFSE presentó *Oposición a Expedición de Interdicto Preliminar y Permanente; Sentencia Declaratoria y Solicitud de Desestimación.*[12] Fundamentó su oposición en el Artículo 678 (3) del Código de Enjuiciamiento Civil.[13] En *primer* lugar, esbozó que si la Federación quería participar de la decisión, lo que hubiese correspondido era intervenir oportunamente en el procedimiento adversativo que se celebró ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante, Tribunal de Distrito Federal). Dicho procedimiento adversativo se refiere a que, el 20 de diciembre de 2021, la JSF radicó ante el Tribunal de Distrito Federal una solicitud para que se determinara que la Puerto Rico Oversight, Management,

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Apéndice de la parte apelante, a la pág. 190.
[12] *Id.,* a las págs. 26-161.
[13] 32 LPRA § 3424, Art. 678 (3).

and Economic Stability Act (por sus siglas en inglés, PROMESA) prevalecía sobre la Ley Núm. 80-2020,[14] así como, sobre la Resolución Conjunta Núm. 33-2021[15], entre otras, y que tales medidas resultaban incompatibles con el Plan Fiscal. Adujo que no podía obviar dicho trámite, instando un pleito tardíamente en el foro local para atacar de forma colateral una determinación acordada mediante estipulación federal (en adelante, la *Estipulación*).[16] Esbozó, además, que la adjudicación de la controversia ante el foro local constituiría una opinión consultiva. También, alegó que el foro local carecía de jurisdicción sobre la materia sobre la *Estipulación* y orden emitida por el Tribunal de Distrito Federal, respecto a los empleados específicos que se acordó formarían parte del *Listado de Puestos Eliminados Propuestos*.

En *segundo* lugar, explicó que el *Listado de Puestos Eliminados Propuestos* fue un acuerdo entre la JSF y el Gobierno. A base de lo anterior, alegó que los empleados públicos sobre los cuales se determinó que no formarían parte del *Listado*, no tenían derecho a solicitar una revisión administrativa. Adujo que, de existir algún reclamo, el foro con jurisdicción era el Tribunal de Distrito Federal por ser el ente con jurisdicción sobre la *Estipulación*. En *tercer* lugar, recalcó que, el 28 de diciembre de 2021, se presentó ante el Tribunal de Distrito Federal una *Estipulación*, mediante la cual se invalidaron las disposiciones de la Ley Núm. 80-2020,[17] excepto lo acordado en la *Estipulación*. A la luz de lo anterior, alegaron que cualquier derecho reclamado al amparo de la Ley Núm.

---

[14] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*

[15] Resolución Conjunta para Ordenar a la OGP y a la ASR Implantar el Programa de Retiro Incentivado Creado Bajo la Ley 80–2020, Resolución Conjunta Núm. 33 de 15 de diciembre de 2021.

[16] Stipulation and Order Resolving Oversight Board Complaint Dated December 20, 2021, Concerning Acts 80-2020, 81-2020, and 82-2020 and Joint Resolution 33-2021, October 20, 2022.

[17] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*

80-2020,[18] que sea contraria a lo dispuesto en la *Estipulación* es inexistente.

En *cuarto* lugar, argumentó que la Carta Circular de la Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura (en adelante, ASR) Núm. 2023-01, solo requería que la CFSE notificara a sus empleados elegibles el *Comunicado Oficial de Implementación Parcial del Programa de Retiro Incentivado*.[19] A tales efectos, solicitó la desestimación de la *Demanda* al amparo de la Regla 10.2 (5) de las Reglas de Procedimiento Civil por falta de un remedio en ley.[20] Por su parte, alegó que, debido a que la JSF, la Oficina de Gerencia y Presupuesto (en adelante, OGP) y la ASR formaron parte de la determinación, constituyen partes sin cuya presencia no podría adjudicarse la controversia. A raíz de ello, solicitó la desestimación al amparo de la Regla 10.2 (6) de las Reglas de Procedimiento Civil por falta de parte indispensable.[21]

Posteriormente, el 3 de noviembre de 2022, la Federación presentó una *Réplica a Oposición a Expedic[i]ón del Interdicto Preliminar y Permanente; Sentencia Declaratoria y Solicitud de Desestimación*.[22] Esbozó que, su petición es un interdicto para que se cumpla con la notificación de la determinación final de la agencia que requiere el debido proceso de ley, toda vez que, no hacerlo les ocasiona daños. Advirtieron que, fue la CFSE quien presentó el *Listado de Puestos Eliminados Propuestos* elegibles bajo la Ley Núm. 80-2020 a la JSF.[23] Añadió que, en la *Demanda* se hicieron alegaciones conducentes a que existen empleados con puestos y/o

---

[18] *Id.*
[19] Junta de Retiro del Gobierno de Puerto Rico & Oficina de Gerencia y Presupuesto, Carta Circular Núm. 2023-01, 22 de julio de 2022.
[20] 32 LPRA Ap. V., R. 10.2 (5).
[21] 32 LPRA Ap. V., R. 10.2 (6).
[22] Apéndice de la parte apelante, a las págs. 162-170.
[23] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*

funciones similares que sí fueron notificados sobre que cualificaban. Respecto a la alegación de parte indispensable por parte de la CFSE, adujo que, ni la OGP, ASR ni la JSF lo son, ya que a quien corresponde el remedio solicitado es a la CFSE. Explicó que, conforme al Artículo 9 de la Ley Núm. 80-2020, le correspondía a la CFSE establecer mediante un procedimiento interno en su Plan de Retiro los criterios para definir lo que se consideran servicios públicos esenciales.[24] En lo concerniente a su solicitud de que se le entregara el *Listado de los Puestos Eliminados Propuestos* y la lista de los puestos que se determinó que no son esenciales, y que por tanto, cualifican bajo la Ley Núm. 80-2020,[25] esbozó que ninguna contiene información confidencial. En cuanto a su solicitud sobre que se les entregara una lista con nombre, puesto y región de los empleados a los cuales se les notificó que cualificaban, indicó que tampoco es información confidencial, pero que, si existían reparos, se podía entregar sin los nombres de los empleados.

Siguiendo el mismo curso de acción, el 10 de noviembre de 2022, la CFSE presentó una *R[é]plica a Oposición a Expedición del Interdicto Preliminar y Permanente; Sentencia Declaratoria y Solicitud de Desestimación.*[26] Expresó que, la Federación venía obligada a demostrar su interés propietario para entonces activar su derecho a las garantías procesales del debido proceso de ley. Luego, el 18 de noviembre de 2022, la Federación presentó una *Oposición a Réplica a Oposición a Expedic[i]ón del Interdicto Preliminar y Permanente; Sentencia Declaratoria y Solicitud de Desestimación.*[27]

El 10 de febrero de 2023, el foro primario emitió la *Sentencia* apelada, en la cual desestimó con perjuicio la *Demanda* presentada

---

[24] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, Art. 9 3 LPRA § 10019.
[25] *Id.*, 3 LPRA § 10011 *et seq.*
[26] Apéndice de la parte apelante, a las págs. 171-178.
[27] *Id.,* a las págs. 179-187.

por la Federación.[28] El foro primario concluyó que no contaba con jurisdicción para entender en la controversia por versar sobre la implementación, interpretación o cuestionamientos jurídicos de los planes de retiro incentivados de las leyes mencionadas en cuestión. Además, concluyó que faltaba parte indispensable en atención a que la JSF no era parte en el pleito. Mediante la misma, desestimó con perjuicio, la *Demanda* presentada por la Federación. En su dictamen, el foro primario expresó:

> Evaluadas las mociones presentadas y adoptados por referencia los fundamentos antes expuestos, haciéndolos formar parte integral de la presente *Sentencia*, se declara **Ha Lugar** la *Oposición a Expedición de Interdicto Preliminar y Permanente: Sentencia Declaratoria y Solicitud de Desestimación*, presentada por la parte demandada, Corporación del Fondo del Seguro del Estado, el 20 de octubre de 2022. El Tribunal **desestima con perjuicio** la *Demanda*, ya que falta parte indispensable. La Junta de Control Fiscal y la Jueza Laura Taylor Swain ostentan jurisdicción exclusiva sobre la materia de cualquier controversia relacionada a la implementación, interpretación o cuestionamiento jurídico de los planes de retiro incentivados, establecidos en las Leyes 80, 81 y 82, según se determinó de manera específica en su resolución. (Énfasis en el original).

Inconforme, 13 de marzo de 2023, la Federación presentó recurso de *Apelación* en el cual esgrimió la comisión de tres (3) errores por el TPI, a saber:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE LA JUNTA DE CONTROL FISCAL Y LA JUEZA LAURA TAYLOR SWAIN OSTENTAN JURISDICCIÓN EXCLUSIVA SOBRE LA MATERIA DE CUALQUIER CONTROVERSIA RELACIONADA A LA IMPLEMENTACIÓN, INTERPRETACIÓN O CUESTIONAMIENTO JURÍDICO DE LOS PLANES DE RETIRO INCENTIVADOS, ESTABLECIDOS EN LAS LEYES 80, 81 Y 82.

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA DEMANDA POR FALTA DE PARTE INDISPENSABLE.

> **TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO ATENDER LA SOLICITUD DE DOCUMENTOS DE LA PARTE APELANTE.

---

[28] *Id.,* a las págs. 188-203.

El 12 de abril de 2023, la CFSE, por conducto de su Administrador, Jesús M. Rodríguez Rosa presentó el *Alegato de la Parte Apelada.* Con el beneficio de la comparecencia de ambas partes, procederemos a resolver.

## II

### A. Recurso de Apelación

La Regla 52.2 (a) de Procedimiento Civil[29], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[30] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[31] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.

> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. [32]

### B. Jurisdicción Sobre la Materia y Desestimación

Es norma reiterada que los asuntos relacionados con la jurisdicción del Tribunal son privilegiados y deben atenderse con

---

[29] 32 LPRA Ap. V, R. 52.2 (a).
[30] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[31] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[32] 4 LPRA Ap. XXII-B, R. 13 (A).

prioridad.[33] Les corresponde a los tribunales ser celosos guardianes de su jurisdicción ya que no tienen discreción para asumir jurisdicción donde no la tienen.[34] Como sabemos, la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias presentadas ante su consideración.[35] Al cuestionarse la jurisdicción de un tribunal por alguna de las partes o, incluso, cuando no haya sido planteado por éstas, el foro examinará y evaluará con rigurosidad el asunto jurisdiccional como parte de su deber ministerial, pues éste incide directamente sobre el poder mismo para adjudicar una controversia.[36] Para que el tribunal pueda atender y adjudicar un caso debe tener jurisdicción sobre la materia. La jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal. Se ha señalado que:

> [La] ausencia de jurisdicción sobre la materia trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio.[37]

Cuando no hay jurisdicción sobre la materia, el tribunal carece de autoridad y poder para entender en el asunto.[38] De ese modo, si el tribunal no tiene jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la

---

[33] *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018).
[34] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).
[35] *AAA v. UIA*, 199 DPR 638, 651-52 (2018).
[36] *Torres Alvarado v. Madera Atiles, supra*; *Ruiz Camilo v. Trafon Group, Inc., supra*.
[37] *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[38] *Shell v. Srio. Hacienda*, 187 DPR 109, 122 (2012).

controversia.[39] Así lo expone la Regla 10.8(c) de las Reglas de Procedimiento Civil[40], que establece:

> [. . .]
> (c) Siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito.

Esto significa que al amparo de la Regla 10.8(c) los tribunales locales deben desestimar una acción civil cuando surge la falta de jurisdicción sobre la materia ante el foro aludido.[41]

Ahora bien, las cortes estatales pueden ejercer jurisdicción concurrente sobre litigios basados en la Constitución, las leyes y los tratados de Estados Unidos, excepto cuando tal jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales.[42] Esto debido a que la jurisdicción federal exclusiva representa la excepción y no la regla.[43] Por consiguiente, se presume la jurisdicción concurrente en ausencia de expresión contraria por el Congreso o condición necesariamente implícita.[44]

### C. Regla 10.2 de las Reglas de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[45] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado en la que solicita que se desestime la demanda presentada en su contra, aun sin necesidad de formular una alegación previa.[46] El tribunal interpretará las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más

---

[39] 4 LPRA Ap. XXII-B, R. 83; *Torres Alvarado v. Madera Atiles, supra; Ruiz Camilo v. Trafon Group, Inc., supra; González v. Mayagüez Resort & Casino, supra.*
[40] 32 LPRA Ap. V, R.10.8 (c).
[41] *González v. Mayagüez Resort & Casino, supra.*
[42] *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256, 259 (1982); *Claflin v. Houseman, Assignee*, 93 U.S. 130, 136 (1876).
[43] *Acevedo v. Srio. Servicios Sociales, Id.*; Dowd *Box Co. v. Courtney*, 368 U.S. 502, 507-508 (1962).
[44] *Acevedo v. Srio. Servicios Sociales, Id.*; Note, State Enforcement of Federally Created Rights, 73 Harv. L. Rev. 1551 (1960).
[45] 32 LPRA Ap. V, R. 10.2.
[46] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

favorable posible a la parte demandante para determinar si la misma es suficiente para constituir una reclamación válida.[47]

La regla establece que:

Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
(1) falta de jurisdicción sobre la materia;
[…][48]

Ahora bien, cuando se plantea la desestimación por falta de jurisdicción sobre la materia, es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo.[49]

**III**

Tenemos ante nuestra consideración un recurso de Apelación presentado por la Federación para que se revise la *Sentencia* emitida por el foro primario mediante la cual desestimó la *Demanda* con perjuicio, luego de concluir que no contaba con jurisdicción sobre la materia para entender sobre la misma, y disponiendo que es el Tribunal de Distrito Federal quien la ostenta, así como que faltaba parte indispensable. Como parte de su determinación, el TPI declaró Ha Lugar la *Oposición a Expedición de Interdicto Preliminar y Permanente, Sentencia Declaratoria y Solicitud de Desestimación.*

En el recurso, la Federación esgrimió tres (3) errores los cuales versan sobre si erró el TPI: (i) al desestimar la *Demanda* con perjuicio, por falta de parte indispensable; (ii) al resolver que la JSF y la jueza Laura Taylor Swain ostentan jurisdicción exclusiva sobre la materia; y, (iii) al no atender la solicitud de documentos de la parte apelante. Puntualizamos que, nos encontramos ante la revisión de

---

[47] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[48] 32 LPRA Ap. V, R. 10.2 (1).
[49] *Colón Rivera et. al. v. ELA,* 189 DPR 1033, 1049 (2013); *Harguindey Ferrer v. U.I.,* 148 DPR 13, 30 (1999).

una *Sentencia* desestimatoria al amparo de la Regla 10.2 (1) de las de Procedimiento Civil.[50]

Acentuamos que, los asuntos relacionados con la jurisdicción del Tribunal son privilegiados y deben atenderse con prioridad.[51] Consecuentemente, al cuestionarse la jurisdicción de un tribunal por alguna de las partes o, incluso, cuando no haya sido planteado por éstas, el foro examinará y evaluará con rigurosidad el asunto jurisdiccional como parte de su deber ministerial, pues éste incide directamente sobre el poder mismo para adjudicar una controversia.[52] Ahora bien, debemos recordar que la jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal. Así, pues, si el tribunal no tiene jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia al amparo de la Regla 10.8 (c) de las Reglas de Procedimiento Civil.[53] A la luz de lo anterior, la ausencia de jurisdicción sobre la materia impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso.[54] Señalamos que, las cortes estatales pueden ejercer jurisdicción concurrente sobre litigios basados en la Constitución, las leyes y los tratados de Estados Unidos, excepto cuando tal jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales.[55]

La controversia principal que, como cuestión de umbral, este Tribunal debe determinar, es si fue un error desestimar la acción instada por la Federación por falta de jurisdicción sobre la materia.

---

[50] 32 LPRA Ap. V, R. 10.2 (1).
[51] *Torres Alvarado v. Madera Atiles, supra; Ruiz Camilo v. Trafon Group, Inc., supra.*
[52] *Id.*
[53] 32 LPRA Ap. V, R. 10.8 (c); 4 LPRA Ap. XXII-B, R. 83; *Torres Alvarado v. Madera Atiles, Id.; Ruiz Camilo v. Trafon Group, Inc., Id.; González v. Mayagüez Resort & Casino, supra.*
[54] *González v. Mayagüez Resort & Casino, Id.*
[55] *Acevedo v. Srio. Servicios Sociales, Id.; Claflin v. Houseman, Assignee, supra.*

Dicha controversia se encuentra enmarcada en el *primer* error esgrimido en el recurso de *Apelación.* Elaboramos.

Tras examinar la *Sentencia* apelada, vemos que el foro primario dispuso que la JSF es una parte indispensable en el presente caso, ya que conforme a la Ley PROMESA esta es el ente regulador de cualquier controversia que surja, al amparo de la Quiebra de Puerto Rico. Pero, más aún, dispuso que es el Tribunal de Quiebras quien tiene la **jurisdicción original y exclusiva** sobre todos los casos dispuestos bajo la referida Ley. Lo anterior, tras concluir que es el referido foro el que tiene la jurisdicción exclusiva para entender en controversias relacionadas a la Leyes Núm. 80, 81 y 82,[56] según determinado por voz de la jueza Laura Taylor Swain. En resumidas cuentas, el foro primario razonó que no tiene jurisdicción sobre la materia para entender en la acción instada.

Por ser los asuntos jurisdiccionales cuestiones privilegiadas, comenzaremos por determinar, específicamente, si se equivocó el foro primario al desestimar la causa de acción instada por la Federación, por falta de jurisdicción sobre la materia.

En específico, nos compete dirimir si el TPI tenía facultad para intervenir en la controversia esgrimida por la parte apelante o si el campo ha sido ocupado por virtud del proceso seguido en el foro federal, según instrumentalizado por el *Public Law* 114-187, de 2020 de junio de 2016[57], conocido como PROMESA. Es de ver, que PROMESA provee un enfoque integral a los problemas y ajustes fiscales, de gestión y estructurales en el que no se exime a ninguna

---

[56] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq*; Ley para Proveer un Retiro Digno para los Miembros del Sistema de Rango de la Policía, los Miembros del Negociado del Cuerpo de Bomberos los Miembros del Cuerpo de Oficiales de Custodia de Puerto Rico, y los Técnicos de Emergencias Médicas, comúnmente conocidos como Paramédicos, del Negociado del Cuerpo de Emergencias Médicas y del Sistema de Emergencias Médicas Municipal, incluyendo los adscritos a las Oficinas para el Manejo de Emergencias; Ley Núm. 81 de 3 de Agosto de 2020, 3 LPRA § 787c nota, Suplemento 2020 *et seq*; Ley Para enmendar el Artículo 2.11 de la Ley Núm. 26 de 2017, Ley de Cumplimiento con el Plan Fiscal, Ley Núm. 82 de 3 de agosto de 2020.
[57] 48 USCA secs. 2101 *et seq.*

parte del Gobierno, y que involucra una supervisión independiente y una autoridad estatutaria federal para que el Gobierno reestructure las deudas en un proceso justo y ordenado.[58] Predicado en ello, una de las responsabilidades delegadas a la JSF fue la de desarrollar planes fiscales para el Gobierno y sus instrumentalidades, con el propósito de proveer un método de responsabilidad fiscal y acceso al mercado de capital.[59]

Debemos reiterar que, por virtud del proceso autorizado por PROMESA, el 20 de diciembre de 2021, la JSF inició un procedimiento adversativo ante el Tribunal de Distrito Federal, mostrando reservas con la implementación de la Ley Núm. 80-2020[60] y de la Resolución Conjunta Núm. 33-2021[61], debido a que su aplicación resultaba incompatible con el Plan Fiscal. Como resultado del proceso, en el cual participó el Gobierno, las partes acordaron y el aludido foro federal aprobó, la *Estipulación* que fue presentada el 28 de diciembre de 2021. Como parte de la *Estipulación*, se determinó que dicho foro federal permanece con la jurisdicción exclusiva para atender todo asunto relativo a esta, según los poderes que así se reconocen por la ley PROMESA, de modo que, el TPI estaba impedido de actuar sobre los planteamientos alzados relativos a la aplicación de la Ley Núm. 80-2020.[62]

Merece reseñar que, previo a la radicación de la acción de autos ante el TPI, el 3 de agosto de 2020, se aprobó la Ley Núm. 80-2020.[63] La finalidad de la precitada legislación fue a los fines de establecer un Programa mediante el cual ciertos empleados elegibles

---

[58] 48 USC sec. 2194(m)(4).
[59] *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 32 F.4th 67,74 (1st Cir. 2022).
[60] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*
[61] Resolución Conjunta para Ordenar a la OGP y a la ASR Implantar el Programa de Retiro Incentivado Creado Bajo la Ley 80–2020, Resolución Conjunta Núm. 33 de 15 de diciembre de 2021.
[62] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*
[63] *Id.*

del Gobierno pudiesen, voluntariamente, separarse de forma incentivada de su empleo antes de la edad de retiro.[64]

Por su parte, el propósito de la *Resolución Conjunta para Ordenar a la OGP y a la ASR Implantar el Programa de Retiro Incentivado Creado Bajo la Ley 80–2020* (Resolución Conjunta Núm. 33-2021) era ordenar que la OGP y a la ASR tomaran todas las medidas necesarias y requirieran a las agencias, corporaciones públicas y municipios elegibles las acciones correspondientes para implantar el Programa, creado bajo la Ley Núm. 80–2020, en cuanto a los empleados no esenciales ya identificados en cada entidad.[65]

No obstante, mediante la antes aludida *Estipulación,* se invalidaron las disposiciones de la Ley Núm. 80-2020,[66] excepto lo acordado en esta. En dicha *Estipulación,* en lo atinente, se acordó lo siguiente:

> 5. No party hereto shall take any acts inconsistent with this agreement.
> 6. This is the entire agreement among the parties in respect of its subject matter and all oral statements and acts are merged herein.
> 7. This agreement may only be amended by a writing signed by the party to be charged and approved by the Title III Court.
> 8. No party releases any claims except as expressly set forth herein.
> 9. **The Title III Court shall retain subject matter jurisdiction to enforce this agreement**. (Énfasis suplido).[67]

Nótese que, entre las estipulaciones autorizadas por el referido Tribunal, se dispuso que, **de existir algún reclamo**, el **foro con jurisdicción** era el **Tribunal de Distrito Federal**. Lo anterior, por ser el ente con jurisdicción sobre la *Estipulación.* Luego de autorizada la *Estipulación,* se creó la Carta Circular Núm. 2023-01

---

[64] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*
[65] Resolución Conjunta para Ordenar a la OGP y a la ASR Implantar el Programa de Retiro Incentivado Creado Bajo la Ley 80–2020, Resolución Conjunta Núm. 33 de 15 de diciembre de 2021.
[66] Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos, Ley Núm. 80 de 3 de agosto de 2020, 3 LPRA § 10011 *et seq.*
[67] Stipulation and Order Resolving Oversight Board Complaint Dated December 20, 2021, Concerning Acts 80-2020, 81-2020, and 82-2020 and Joint Resolution 33-2021, October 20, 2022.

de la ASR en conjunto con la Carta Circular Núm. 0006-2022 de la OGP.[68] La Carta Circular abordaba la primera fase de implementación parcial del Programa de la Ley Núm. 80-2020 para empleados que ocuparan puestos identificados por las agencias como no esenciales, conforme a acuerdo entre el Gobierno y la JSF. Entre los objetivos se encontraba establecer las directrices necesarias para que las agencias y entidades gubernamentales elegibles les notificaran a aquellos empleados que ocuparan puestos catalogados como no esenciales, que se disponían a eliminar tales puestos, conforme a la elección previa del empleado de acogerse al Programa bajo la Ley Núm. 80-2020, a excepción de que tales empleados decidieran retractarse de participar en el referido Programa.

Ahora bien, independientemente de lo anterior, es claro que una lectura integral de la *Estipulación* entre la JSF y el Gobierno revela que **quién único tiene autoridad para entender en asuntos relacionados a la *Estipulación*** es el Tribunal de Distrito Federal y no el foro apelado. Existe jurisdicción exclusiva del Gobierno federal sobre los asuntos de derecho federal cuando el Congreso dispone expresamente para ello o cuando la intención clara de la ley es privar a los tribunales estatales de la autoridad sobre ese asunto federal.[69] Es menester señalar que, que la jurisdicción federal exclusiva representa la excepción y no la regla.[70]

En fin, luego de haber juzgado que el foro primario no incidió al desestimar la causa de acción por falta de jurisdicción sobre la materia, por estar el campo ocupado por el foro federal, se hace innecesario revisar los demás señalamientos de error. Lo anterior ya que, conforme a lo dispuesto por el Alto Foro, ante la ausencia de

---

[68] Junta de Retiro del Gobierno de Puerto Rico & Oficina de Gerencia y Presupuesto, Carta Circular Núm. 2023-01, 22 de julio de 2022.
[69] *González v. Mayagüez Resort & Casino, supra*, 856; *Rodríguez v. Overseas Military*, 160 DPR 270, 277–278 (2003).
[70] *Acevedo v. Srio. Servicios Sociales, supra*; Dowd *Box Co. v. Courtney, supra.*

jurisdicción sobre la materia, un tribunal sólo puede desestimar el asunto ante sí; nada más.[71] Entiéndase, cuando la desestimación se basa en la jurisdicción exclusiva de otro foro, precisamente es ese otro foro el que está llamado a dilucidar la controversia; ya que la adjudicación no puede ser válidamente hecha por un foro sin jurisdicción.[72] Por último, reiteramos que, un tribunal no puede asumir jurisdicción donde no la tiene.[73] Una sentencia que es dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente.[74]

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[71] *González v. Mayagüez Resort & Casino, Id.*, 864.
[72] *Id.*
[73] *Id.*, 864-865; *S.L.G. Szendrey-Ramos v. F. Castillo, supra*; *Morán v. Martí*, 165 DPR 356, 364 (2005); *Martínez v. Junta de Planificación*, 109 DPR 839, 842 (1980).
[74] *Szendrey-Ramos v. F. Castillo, Id.*